UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDWARD HALEY,

Defendant.

Case No. 1:26-cr-68-4

Hon. Hala Y. Jarbou

______________________________/

**OPINION**

Defendant Edward Haley has been charged with the straw purchase of a firearm, in violation of 18 U.S.C. § 932(b)(1), and being a felon in possession of firearm ammunition, in violation of 18 U.S.C. § 922(g)(1). Haley has filed a motion to suppress (ECF No. 65), arguing that the police conducted two unlawful searches pursuant to two warrants they obtained: a search of his phone location data, and a search of his girlfriend's apartment. Haley argues that both searches violated the Fourth Amendment and tainted subsequent evidence acquired by the police. For the reasons explained below, the Court will deny the motion to suppress.

## I. BACKGROUND

The police's investigation in this case began in February of 2026, when they interviewed Haley's codefendant, Daeshunn Whitfield. Federal investigators believed that Whitfield was conducting straw purchases of firearms—that is, buying firearms and reselling them to people legally prohibited from possessing them, such as Haley. (*See* Phone Warrant Application, ECF No. 70-1, PageID.212.) State records indicated that on November 13, 2025, Whitfield registered a Glock Model 17 handgun in his name. (*Id.*, PageID.214.) Police discovered the following texts on Whitfield's phone from the same day, which they believed were related to the firearm purchase:

| | |
|---|---|
| Whitfield: | Meet me at the store |
| Haley: | Way rn brody |
| Haley: | Had to catch few plays |
| Whitfield: | I'm at dunham's |
| * | * * * * |
| Whitfield: | They got a17 and 19 |
| * | * * * * |
| Haley: | They ain't tweakin or nun is they |
| Whitfield: | We good I'm paying now |
| Haley: | Bet |
| Whitfield: | Just thrown me 50 for going in the store for u |

(*Id.*, PageID.212.)

The person labeled "Haley" in the exchange above was instead designated as "Stormo" on Whitfield's phone, but police knew that Haley went by the nickname "Stormy." (*Id.*, PageID.214.) They also found that the phone number of "Stormo" matched the number that Haley had given to his probation officer. (*Id.*) Additionally, investigators knew that Whitfield and Haley were affiliates of the same gang. (*Id.*, PageID.215.)

On March 27, 2026, the police applied for a warrant to track the location of Haley's phone. In the warrant affidavit, officers outlined the above information and explained that they believed Whitfield had purchased the Glock 17 for Haley, who had a felony record and was therefore prohibited from possessing a firearm. Although the alleged straw purchase took place in November—over four months before the warrant application—the investigators stated that firearms are generally durable goods that people keep for a long time, so it was plausible that Haley would still be in possession of the illegal Glock. (*See id.*) Investigators represented that tracking Haley's phone location data would assist them with physical surveillance and help them determine

where Haley might be storing the firearm. (*Id.*) A magistrate judge authorized the warrant, allowing the police to obtain 30 days of historical location information and 30 days of real-time location information.

Based on the phone location data, investigators concluded that Haley "spends the majority of his time, including during the late night and early morning hours, in the area of" an apartment that the parties refer to as the River Terrace residence. (Residential Warrant Application, ECF No. 70-2, PageID.224.) Moreover, the second most frequent contact on Haley's phone was a number associated with the tenant of the River Terrace residence. Investigators viewed surveillance footage of the River Terrace residence and "observed Haley coming and going from the front door of the [River Terrace] [r]esidence at the same time the prospective location information showed his phone coming and going from the area of the [River Terrace] [r]esidence." (*Id.* (cleaned up).) Haley often wore a backpack when coming and going from the residence; officers suspected he could be using the backpack to carry the firearm in question. (*Id.*) The police knew that Haley had provided an address to his probation officer that differed from the River Terrace residence, and they knew that "individuals who misrepresent their primary address to probation commonly do so to conceal criminal activity they are involved with at their actual primary address." (*Id.*)

On April 8, 2026, the police applied for a warrant to search the River Terrace residence based on the information outlined above. They obtained the warrant from a magistrate judge and executed it the following day. They found a Glock 17 instruction manual and ammunition inside the River Terrace residence. Haley was subsequently indicted for straw purchasing the firearm and possessing the ammunition. He now moves to suppress all evidence recovered pursuant to the two warrants, contending that they were obtained without probable cause.

## II. LEGAL STANDARD

"As a general matter, the exclusionary rule requires the suppression of evidence obtained in violation of the Fourth Amendment." *United States v. Gray*, No. 25-3672, 2026 WL 2021018, at *4 (6th Cir. July 13, 2026) (citing *Murray v. United States*, 487 U.S. 533, 536–37 (1988)). In most cases, to comply with the Fourth Amendment, "a warrant based on information establishing probable cause is required to search a person or a place and to seize evidence found there." *United States v. McLevain*, 310 F.3d 434, 438 (6th Cir. 2002). To resolve a motion to suppress, the Court must examine "the information presented in the four corners of the affidavit" to determine whether the magistrate judge "had a 'substantial basis for concluding that probable cause existed.'" *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (omission in original) (quoting *Gates*, 462 U.S. at 238).

Even if a search warrant is obtained without probable cause, the evidence recovered pursuant to that warrant may be admissible as long as it was "seized in reasonable, good-faith reliance on a search warrant." *United States v. Leon*, 468 U.S. 897, 905 (1984). In other words, the evidence should only be suppressed if "a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). Suppression is therefore warranted if the warrant affidavit is "bare bones," that is, "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant." *Id.* Similarly, an officer does not act in good faith where "a warrant is 'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *United States v. Abernathy*, 843

F.3d 243, 257 (6th Cir. 2016) (quoting *Leon*, 468 U.S. at 923); *see also United States v. Boatright*, No. 6:25-cr-10, 2025 WL 3634076, at *4 (E.D. Ky. Dec. 15, 2025) ("A deficiency must be stark enough, regarding particularity, to remove the reasonable presumption of validity.").

## III. ANALYSIS

### A. Phone Location Warrant

The first warrant authorized the police to collect 30 days of historical location data and 30 days of prospective (i.e., real-time) location data from Haley's cell service provider. Haley argues that this data collection violated the Fourth Amendment because the warrant was not supported by probable cause. The Supreme Court has held that accessing a person's historical phone location data is a search within the meaning of the Fourth Amendment. *Carpenter v. United States*, 585 U.S. 296, 316 (2018). However, "[i]n *Carpenter*, the Supreme Court reserved whether the acquisition of a phone's 'real-time' location data (as compared to its historical location data) is a Fourth Amendment 'search' necessitating a warrant." *United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021) (cleaned up). And the Sixth Circuit has subsequently declined to address whether its precedent prior to *Carpenter*—which held that acquisition of real-time phone location data is not a search—remains good law. *See United States v. Mubarak*, No. 24-3274, 2025 WL 2965694, at *4 (6th Cir. Oct. 21, 2025). In any event, it is unnecessary to decide whether the Fourth Amendment applies to the collection of real-time location data; the parties do not raise the issue, and—as explained below—here the warrant was supported by probable cause.

Investigators based the warrant application on Whitfield's texts with Haley, which they interpreted as arranging a straw purchase. In his motion, Haley does not contest that the police had reason to believe the phone number in question belonged to him, or that Whitfield was attempting to conduct a straw purchase. Instead, Haley raises three arguments: the texts do not

show that he ever received a firearm from Whitfield; the texts were too stale to support the warrant; and the phone data obtained was unreasonably broad. However, these arguments are unavailing.

First, while the texts do not technically confirm that Haley received the firearm, they provide strong reason to think he did. Whitfield tells Haley to meet him at the store, and Haley replies that he is on his way. Whitfield says that the store has a "17"—presumably a Glock 17—and that he is "paying now." (Phone Warrant Application, PageID.212.) Haley replies "[b]et," confirming that he is on board with the arrangement, and Whitfield asks Haley to pay him $50. (*Id.*) In his motion, Haley makes much of the fact that the texts do not show him *agreeing* to the price or confirming that the sale went through. But the absence of such texts does not overcome the inference that Haley ultimately did buy the firearm; Haley and Whitfield were about to meet at the store, so there was no need to confirm over text that the purchase had occurred. Haley's texts do not evince any reservation on his part regarding the $50 price tag. While it is certainly possible that Haley backed out, probable cause requires only a fair probability that Haley obtained the firearm, and that standard is met here.

Second, the Court is unpersuaded by Haley's argument that a four-month-old firearm purchase is too stale to support a search warrant. The Sixth Circuit has frequently observed that guns "are durable goods and might well be expected to remain in a criminal's possession for a long period of time." *United States v. Powell*, 603 F. App'x 475, 478 (6th Cir. 2015); *see United States v. Vanderweele*, 545 F. App'x 465, 469–70 (6th Cir. 2013) (a gun is "commonly kept by its owner for a long time"); *United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005) ("[T]hose who own and possess firearms generally maintain them for long periods of time."). Accordingly, the Sixth Circuit has held that a warrant to search for a firearm was not stale despite lapses in time similar to, or significantly larger than, the four months that elapsed here. *See, e.g.*, *Lancaster*, 145

F. App'x at 513 (two years); *United States v. Hampton*, 760 F. App'x 399, 403 (6th Cir. 2019) (ten months); *Vanderweele*, 545 F. App'x at 469–70 (seven months). Haley provides no case law supporting the notion that a firearm is unlikely to be kept for more than a few months. Thus, the information in the warrant was not stale.

Third, the warrant was not overbroad. "A search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will be valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) (quotation marks omitted). "The chief purpose of the particularity requirement [is] to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (alteration in original). Here, the warrant authorized police to obtain phone location data beginning 30 days before the issuance of the warrant and ending 30 days after its issuance. Haley argues that 60 days of data was unnecessary to determine his residence, and cites *United States v. Powell*, 943 F. Supp. 2d 759, 783 (E.D. Mich. 2013), where a district court found that tracking a phone for 45 days was "significantly longer than reasonably necessary to determine [the defendant]'s location." Haley also contends that it was unnecessary to track his phone at all because investigators already knew where he (purportedly) lived—at the address he had given his probation officer.

However, the warrant application suggests that investigators did not seek the location data merely to determine where Haley lived. Rather, they stated that the phone data would help them "identify locations Haley has frequented" and therefore "identify the likely location(s) where Haley is storing his illegally possessed firearm." (Phone Warrant Aff., PageID.215.) If Haley

possessed the firearm, he may have been storing it at the residence he reported to the probation officer, but he could have also been storing it at some secondary location—indeed, the fact that the probation officer had his address on file might provide strong motivation for him to keep the firearm somewhere else. Thus, even if the police thought they knew where Haley lived, they still had reason to find other locations he frequently visited. Along the same lines, the temporal scope of the warrant was reasonable: while it may take only a few days of tracking to determine someone's residence, it could take much longer to determine all the possible places a person might store contraband. Thus, the request for 30 days of historical information and 30 days of real-time tracking was not unreasonable in scope. *See United States v. Nelson*, No. 20CR353BMCVMS, 2023 WL 358421, at *3 (E.D.N.Y. Jan. 23, 2023) ("Law enforcement's belief that 30 days of historical data and 31 days of prospective data were necessary to plan defendant's arrest is eminently reasonable . . . ."); *United States v. Grant*, No. 3:21-cr-44, 2021 WL 4955193, at *7 (W.D. Ky. Oct. 25, 2021) (rejecting argument that "90 days of location tracking is overbroad" or "that 45 days each of historical and prospective data is excessive" because defendant failed to provide any supporting case law).

In sum, the investigators had probable cause to obtain the warrant for Haley's location data, and the warrant was reasonable in scope. Moreover, even if the warrant was lacking in probable cause or excessive in scope, *Leon*'s good-faith exception would apply because Haley has not established that the warrant affidavit was bare bones or that the warrant itself was facially deficient. *See White*, 874 F.3d at 496; *Abernathy*, 843 F.3d at 257.[1]

---

[1] Haley also notes that investigators obtained the search warrant under 18 U.S.C. § 2703, which requires that a warrant applicant "offer[] specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). For the same reason that the warrant affidavit satisfies the probable cause standard, it also satisfies the statutory standard. In addition, suppression of evidence is not an available remedy for a violation of § 2703(d). *Ajan v. United States*, No. 2:02-CR-71, 2009 WL 1421183, at *10 (E.D. Tenn. May 20, 2009) ("The Sixth Circuit has specifically held that a violation of [§ 2703] does not warrant suppression of

**B. Residential Search Warrant**

The second warrant authorized the police to search the River Terrace residence. Haley avers that the River Terrace residence belonged to his girlfriend, and that his primary residence was the address he had provided to his probation officer (the "East Napier residence"). Because the River Terrace residence did not belong to him, he argues, the police lacked probable cause to believe evidence of his alleged straw purchase would be found there.

The police concluded that Haley lived at the River Terrace residence based on the cell phone location data obtained from the first warrant. Haley contends that that conclusion was unjustified for two reasons. First, cell phone data specifies only the location of the cell tower to which the phone is connected, not the location of the phone itself, and phones do not always connect to the nearest cell tower. So knowing the cell tower to which a phone is connected does not necessarily tell investigators where the phone (or the person holding it) is located. Second, the East Napier residence and the River Terrace residence were close enough geographically that a phone located at either residence would likely be connected to the same cell tower. Thus, the location information acquired by the investigators could not have established that Haley resided primarily at the River Terrace residence rather than the East Napier residence.

But even assuming that Haley's contentions are correct, the warrant affidavit still provides reason to believe that Haley lived at the River Terrace residence. The affiant explained that after receiving the phone location data, "[i]nvestigators began reviewing surveillance footage that captured the [River Terrace] [r]esidence and observed Haley coming and going from the front door

---

evidence." (citing *United States v. Meriweather*, 917 F.2d 955, 960 (6th Cir. 1990)); *United States v. Perrine*, 518 F.3d 1196, 1202 (10th Cir. 2008) (collecting cases).

of the [River Terrace] [r]esidence at the same time the prospective location information showed his phone coming and going from the area of the [River Terrace] [r]esidence." (Residential Warrant Aff., PageID.225 (cleaned up).) Thus, even if the officers could not use the phone data to determine Haley's location, the surveillance footage sufficiently established that he spent a significant amount of time at the River Terrace residence, and it was reasonable for the officers to infer that he lived there.

Haley also argues that even if officers reasonably believed that he lived at the River Terrace residence, and that he had purchased a firearm from Whitfield, they had no reason to think the firearm would be found at the River Terrace residence when they obtained the residential search warrant. To the extent that this argument is based on the staleness of the firearm information, it is unpersuasive—as set out above, the firearm information was not stale when the police obtained the first warrant, and it was not stale less than two weeks later when the police obtained the second warrant and conducted the residential search.

To the extent that Haley objects to the inference that his firearm could be found in his residence, that objection also fails. It is true that as a general matter, "[t]here must . . . be a *nexus* between the place to be searched and the evidence sought." *Brown*, 828 F.3d at 381 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). But as this Court has previously recognized, "the possession of a gun creates a presumption that the gun will be in one's home." *United States v. Bryant*, No. 1:26-cr-19, 2026 WL 2274135, at *5 (W.D. Mich. Aug. 7, 2026). The Sixth Circuit has similarly noted "that individuals who own guns keep them at their homes," so "a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence." *Peffer v. Stephens*, 880 F.3d 256, 271 (6th Cir. 2018).

Haley cites *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006), in support of his position. There, the police arrested a defendant on his porch and found cocaine in his pocket; the court held that the police lacked probable cause to subsequently search the defendant's home for drugs, as "[a] suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship necessary to a finding of probable cause." *Id.* at 524. But that case is meaningfully distinct from cases involving firearms; as noted above, the Sixth Circuit has repeatedly recognized that it is reasonable to infer for purposes of a probable cause determination that a person keeps a firearm in their home. *See Vanderweele*, 545 F. App'x at 469; *United States v. Goodwin*, 552 F. App'x 541, 544–45 (6th Cir. 2014); *United States v. Cobb,* 397 F. App'x 128, 133 (6th Cir. 2010); *see also Peffer*, 880 F.3d at 272 (differentiating between the nexus requirement for drugs and firearms). Thus, once the police concluded that Haley was likely living at the River Terrace residence, they had probable cause to search that residence for the firearm in question.

Finally, even if Haley is correct that the warrant affidavit did not create probable cause to search the River Terrace residence, *Leon*'s good-faith exception applies because the affidavit was not "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant." *White*, 874 F.3d at 496.

## IV. CONCLUSION

Both warrants were supported by probable cause and of reasonable scope; moreover, the good-faith exception precludes suppression. The Court will therefore deny Haley's motion.

An order will enter in accordance with this Opinion.

Dated: November 3, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE